895 P.2d 1210

**Mary Louise Dominguez KOEHN, Plaintiff,**

v.

**Wayne Andrew RIGGINS, an individual; CH2M Hill Central, Inc., an Oregon corporation authorized to do business in Idaho, Defendants–Respondents,**

and

**Vernon K. SMITH, Real Party in Interest–Appellant.**

No. 20688.

Supreme Court of Idaho, Boise, December 1994 Term.

May 11, 1995.

Vernon K. Smith, Jr., Boise, for appellant.

Quane, Smith, Howard & Hull, Boise, for respondents. Kathryn A. Sticklin argued.

McDEVITT, Chief Justice.

This case involves an appeal of the district court's decision to impose sanctions against Vernon K. Smith (Smith) under Rule 11(a)(1) of the Idaho Rules of Civil Procedure. We hold that the district court did not abuse its discretion in imposing sanctions against Smith. The record supports the conclusion that Smith acted unreasonably under the circumstances in that he failed to conduct a proper investigation upon reasonable inquiry into the facts and legal theories of Ms. Mary Louise Dominguez Koehn's (Koehn) personal injury case. We affirm the imposition of sanctions pursuant to I.R.C.P. 11(a)(1).

## I.

### BACKGROUND AND PROCEEDINGS

#### A. FACTS

From 1978 to 1989, Koehn was involved in five automobile accidents. On October 24, 1987, Koehn was driving her car and was struck from behind by a truck driven by Wayne Andrew Riggins (the Riggins accident). Mr. Riggins was driving a truck owned by his employer, CH2M Hill Central, Inc. (CH2M). Koehn suffered injuries to her mouth and teeth, claimed to have sustained injuries to her back. Additionally, there was extensive damage to her car.

Early the next morning, on October 25, 1987, Koehn was involved in a second accident (the Roberts accident), where she rear-ended the parked car of Katheryn Roberts (Roberts). Koehn left the scene of the Roberts accident and returned home. The Boise Police Department charged Koehn with negligent driving, leaving the scene of an accident, and driving without privileges. The police arrested Koehn on two outstanding warrants. The police report from the Roberts accident indicated that the impact caused a significant amount of damage to Roberts' vehicle. Smith represented Koehn in a criminal action involving the Roberts accident.

Shortly after the accidents, Koehn went to her family physician, Dr. Max Bell, for treatment of her facial injuries. Koehn later contacted CH2M's insurance carrier, Fireman's Fund Insurance Company (Fireman's Fund), claiming injuries suffered from the Riggins

accident. Fireman's Fund paid Koehn $7,300.00 for her injuries, property damage, and lost wages from the Riggins accident. Koehn did not claim any back injuries at that time. When a final settlement could not be reached between Koehn and Fireman's Fund, Smith represented Koehn in a suit against Mr. Riggins, Fireman's Fund and CH2M (collectively Riggins).

In addition to the Riggins and the Roberts accidents, Koehn was also involved in three other accidents. On March 21, 1988 in Caldwell, Idaho, Carol Lowe (Lowe) turned in front of Koehn, and Koehn hit Lowe's car. Koehn was involved in another accident, on January 16, 1989 where Koehn was rear-ended by a truck. The record establishes Koehn complained of back pain after this accident also.

Koehn was also involved in an accident in 1978. The record does not contain specifics about this accident, except a letter from Dr. Richard Gardner that stated Koehn was injured in an accident on July 5, 1978. In the letter, Dr. Gardner stated that Koehn complained of pain in her left arm, shoulder, forearm, and neck and had some left leg abnormalities and lower back pain.

## B. MEDICAL HISTORY

Koehn sought medical treatment from many physicians for her injuries from the Riggins accident. Koehn claimed she suffered no injuries from the other accidents. The physicians had varying opinions on whether Koehn's back pain was due to a degenerative arthritic condition or due to the trauma of the accident itself.

After the Riggins accident, Koehn went to her family doctor, Dr. Bell, for treatment of her facial injuries. Dr. Bell saw Koehn again in December 1987 for treatment of her lower back pain. Koehn first complained of back pain during the December visit.

In July of 1988, Dr. Bell referred Koehn to Dr. John Bishop for treatment of Koehn's back injuries. Dr. Bishop examined Koehn several times during 1988 and 1989. Dr.

Bishop believed Koehn's symptoms to be related to the Riggins accident. However, Dr. Bishop stated that Koehn did have a degenerative condition. Dr. Bishop performed back surgery on Koehn in February 1989. Dr. Gary Botimer performed a second surgery on Koehn's back in 1992.

Dr. Bishop testified that when he first examined Koehn, he was only aware of the Riggins accident. Dr. Bishop did not learn of the January 1989 accident until the time of his deposition, in August 1991. Dr. Bishop stated he could not have determined that Koehn's condition was caused by the Riggins accident if he had known of the other accidents at the time he examined Koehn.

Dr. Barry Sams, a chiropractic physician, examined Koehn on February 22, 1989 and determined that Koehn suffered permanent disability in her back. Dr. Sams concluded that the trauma of the Riggins accident caused Koehn's injury. Dr. Sams stated that Koehn's condition was aggravated by a degenerative condition in her lower back. It is unclear from the record whether Dr. Sams was aware of Koehn's other accidents at the time of the examination.

Koehn was also examined by other physicians. Dr. Thomas E. Henson, an independent medical examiner, examined Koehn and concluded that in light of the January 1989 accident, it was unlikely that Koehn's lower back injury was related to the Riggins accident. Dr. Michael O'Brien examined Koehn in February 1990 and concluded that she had lower back pain resulting from the Riggins accident. Dr. O'Brien was aware of the January 1989 accident during his examination and stated that the January 1989 accident had no affect on Koehn's lower back injury. Dr. O'Brien concluded that Koehn suffered permanent total disability of 24% as compared to total impairment of the whole body. Dr. Jeffery G. Hessing examined Koehn in December 1989 and concluded that Koehn suffered a total, permanent impairment of 10% as compared to total impairment of the whole body. Dr. Hessing stated that there was no causal connection between Koehn's back injury and the Riggins accident.

Dr. Ronald E. Jutzy, who was expected to testify at trial, later refused to testify on the causation between Koehn's back injuries and the Riggins accident. Dr. Jutzy stated that when he initially examined Koehn, he knew of only the Riggins accident. When Dr. Jutzy later became aware of Koehn's other accidents, he would no longer testify that Koehn's injuries came solely from the Riggins accident.

With respect to the 1978 accident, Koehn was examined by Dr. Richard Gardner for injuries she suffered in her neck and back. Dr. Gardner found that some of Koehn's symptoms were due to pre-existing degenerative conditions.

## C. PROCEDURE

On October 23, 1989, Koehn, through her attorney Smith, filed suit against Riggins for personal injuries suffered as a result of the Riggins accident. The cause of action against Fireman's Fund was dismissed, and Koehn and Smith were held jointly and severally liable for the costs and attorney fees for Fireman's Fund having to defend the action.

The case against Riggins was set for trial on October 7, 1991. The trial date was continued and Smith later withdrew from the case. On June 2, 1992, new counsel was substituted in place of Smith. Koehn, through her new attorneys, moved the court to dismiss her case. The district court dismissed the action and granted fees and costs to Riggins against Koehn under I.C. § 12–121. On its own initiative, the district court imposed sanctions against Smith under I.R.C.P. 11(a)(1). The district court concluded that Koehn and Smith's liability should be joint and several.

Smith filed an objection to the district court's memorandum decision and order because he had not been notified of any request for attorney fees, costs or sanctions, any memorandum of costs or fees, or any notice of hearing in this matter. The district court stayed the proceedings and extended the time for Smith to respond to the court's decision and order and to Riggins' motions. After consideration of Smith's arguments, the district court declined to modify its prior decision. The district court found that: (1) Koehn's lawsuit was a fabricated claim without foundation or basis at the time it was filed; (2) Koehn perjured herself in her deposition and in response to discovery; (3) the continuance motion granted Smith was based on Smith's statement that new medical testimony was available, but in attempting to secure the medical testimony, Koehn misrepresented her accidents and medical history; (4) compelling evidence existed to establish that Koehn's condition is degenerative and not related to the Riggins accident; (5) minimal due diligence investigation would have revealed to Smith significant and essential facts to the case concerning Koehn's prior accidents and the possible injury caused; (6) Smith allowed Koehn to perjure herself at her deposition; and (7) Smith failed to properly inform the medical physicians of all facts of Koehn's case before seeking their opinion. Judgment was entered against Koehn for attorney fees and costs under I.C. § 12–121 and against Smith under I.R.C.P. 11(a)(1), to be jointly and severally liable. Smith appeals the decision of the district court.

## II.

## ANALYSIS

◼ The standard of review for an appellate court reviewing a trial court's imposition of sanctions pursuant to I.R.C.P. 11 is one of abuse of discretion. *Gubler v. Brydon,* 125 Idaho 112, 113–14, 867 P.2d 986, 987–88 (1994). "The abuse of discretion standard is more compatible with our view of the appropriate role of appellate courts in reviewing the award of sanctions under I.R.C.P. 11(a)(1) than *de novo* review." *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (quoted in *Gubler v. Brydon,* 125 Idaho at 113–14, 867 P.2d at 987–88 and adopting the analysis of *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

■ I.R.C.P. 11(a)(1) permits sanctions to be imposed upon an attorney who signs a pleading, motion, or other paper which violates Rule 11's requirements. I.R.C.P. 11(a)(1); *Stevens v. Fleming,* 116 Idaho 523, 532, 777 P.2d 1196, 1205 (1989). Rule 11 requires that the pleading be (1) well grounded in fact, (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (3) not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increases in the costs of litigation. I.R.C.P. 11(a)(1). An attorney is required to perform a prefiling inquiry into both the facts and the law involved to satisfy the affirmative duty imposed by Rule 11. *Sun Valley,* 119 Idaho at 95, 803 P.2d at 1001; *Stevens,* 116 Idaho at 532, 777 P.2d at 1205. "Reasonableness under the circumstances" is the appropriate standard to apply under I.R.C.P. Rule 11. *Durrant v. Christensen,* 117 Idaho 70, 74, 785 P.2d 634, 638 (1990). Under the "reasonableness under the circumstances" standard, the appropriate focus of the trial court should be whether the attorney conducted a "proper investigation upon reasonable inquiry" into the facts and legal theories of the case. *Hanf v. Syringa Realty, Inc.,* 120 Idaho 364, 369, 816 P.2d 320, 325 (1991).

■ The district court made extensive findings and concluded that sanctions should be imposed upon Smith. The district court focused on acts by Smith both before and after the filing of the complaint. The district court improperly included in its determination acts by Smith which were part of the trial itself to support its determination that Rule 11 sanctions were proper. I.R.C.P. 11(a)(1) applies only to the signing of a "pleading, motion, or other paper." I.R.C.P. 11(a)(1). When determining whether Rule 11 sanctions should be imposed, the trial court must only consider the attorney's conduct ·in the filing of pleadings, motions or other papers. *See* I.R.C.P. 11(a)(1) ("If a pleading, motion or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it ... an

appropriate sanction[.]"); *See also Sun Valley,* 119 Idaho at 95, 803 P.2d at 1002 (quoting the advisory committee notes on the 1985 amendment of I.R.C.P. 11, which stated that, "[t]he court ... should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.") In light of an attorney's conduct in filing a pleading, the district court must determine whether the attorney exercised reasonableness under the circumstances and made a proper investigation upon reasonable inquiry into the facts and legal theories before signing and filing the document. *Hanf,* 120 Idaho at 369, 816 P.2d at 325; *Sun Valley,* 119 Idaho at 95, 803 P.2d at 1002.

■ The actions of Smith which were part of the trial, such as Smith's awareness of Koehn's perjury during depositions without correcting her or informing the opposing counsel of the misrepresentation, may be unethical conduct by Smith, but such trial activities do not support Rule 11 sanctions. However, we find that the district court made sufficient findings of Smith's failure to properly investigate Koehn's case and of the unreasonableness of Smith's inquiry to support its determination of sanctions against Smith under I.R.C.P. 11(a)(1).

■ Smith failed to perform even a cursory investigation into accidents which Smith knew occurred and instead relied upon Koehn's statement that she suffered injuries only from the Riggins accident. Smith's representation of Koehn in a criminal case involving one of Koehn's accidents gave Smith information about Koehn's driving record and about the Roberts accident. Smith thus knew of the Roberts accident and should have inquired into the accident to discover the extent damage caused by the Roberts accident. Had Smith looked at the police reports from the Roberts accident, he would have discovered the accident caused more damage than was revealed by Koehn and may have aggravated Koehn's injuries. Had Smith made any inquiry into Koehn's medical history, he would have discovered from

Koehn's family physician that Koehn was involved in other accidents and that she did not complain of any back injuries until after the 1988 accident. We do not require that an attorney perform a complete background investigation of their clients prior to representation, but Rule 11 mandates an attorney conduct at least a reasonable inquiry into the facts of the case prior to filing a complaint. This preliminary investigation Smith failed to perform. Rule 11 sanctions were properly imposed on Smith by the district court.

### III.

### CONCLUSION

The district court did not abuse its discretion in finding that Smith failed to perform a proper investigation upon reasonable inquiry prior to filing the complaint. We affirm the district court's imposition of sanctions pursuant to I.R.C.P. 11(a)(1) and award costs to Riggins on appeal.

JOHNSON, TROUT, SILAK, JJ., and REINHARDT, Justice Pro Tem., concur.